Filed 10/14/14  P. v. Brown CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C072753 |
| Plaintiff and Respondent, | (Super. Ct. No. SF118629A) |
| v. | |
| AUSHUA McDUFF-BROWN, | |
| Defendant and Appellant. | |

On October 3, 2011, Shikara Daan was at the Madison Market with her son and her niece Antionette Brooks.  They went to the market so the father of Brooks's children, Timothy Fonville, could drop off the children with Brooks.  While Brooks was on the phone arranging the meeting, Daan overheard a female in the background "being disrespectful."

Daan and Brooks showed up before Fonville did.  Fonville arrived in a car driven by defendant Aushua McDuff-Brown.  Fonville was in the front passenger seat, and a woman and three children were in the rear.  Brooks walked outside the store to meet her children.  Looking through the store window, Daan saw defendant and the woman

1

passenger come out of the car. She became upset when the woman passenger started talking loudly and "saying stuff." Daan went outside and heard Brooks exchange words with the woman, who was now back in the backseat of the car.

Brooks threw a "sippy cup" at the woman in the backseat.[1] Daan thought the woman in the backseat had thrown the cup; she started to talk "trash" to the woman in the backseat and challenged her to come out and fight. She went around to the woman's side of the car and hit her through the window. The woman came out of the car and fought with Daan until they were separated by Fonville and another person.

Fonville and the woman went back into the car while Daan went inside the store to get her things. When Daan came outside, the car was stopped a little farther away in the parking lot, facing the lot's far driveway.

Defendant, who was in the driver's seat, told Daan, "Bitch, whoop dee whoo. I'm gonna come over," and "Bitch, you think you hard, Bitch. You ain't this shit. That's my friend." Daan was about 60 to 65 feet away from the car. She told defendant that defendant talked like that only because she was inside the car. Defendant threatened to run her over, and Daan responded by threatening to break her window with a scooter that she had.

Defendant drove the car toward Daan. According to Daan, the car was traveling more than five or ten miles an hour. The car came straight toward Daan until she jumped away; the passenger side of the car bumped the side of Daan's thigh.

Deleshia Mason took her three-year-old son, Ruben Ramirez, to the Madison Market that same day. She helped Ruben place his silver scooter against the store's wall. A similar scooter was also outside the store.

---

[1] Brooks testified to throwing the cup at the woman in the backseat.

Mason was preoccupied with Ruben's scooter. Hearing the sound of tires moving on gravel, she looked up and saw a car heading straight toward where she and her son were standing. She heard the car's engine "idling up," as in "when you first press on the gas." The car, which did not slow down, hit Ruben and pinned him against the wall of the market.

Mason ran over to the car and told the driver, defendant, that she had hit her son. It sounded like defendant was still pressing on the accelerator, so Mason tried to reach into the car and move the gear shift to reverse. Defendant eventually reversed the car and drove off. As did Mason and Daan, Brooks and another witness identified defendant as the driver.

Ruben died of blunt force trauma to his trunk. Tire marks near the parking blocks in front of the market indicated acceleration away from the market. There were no skid marks consistent with the tires locking up.

Two days later, Gisela Cervantes was on a Greyhound bus traveling from Oakland to Los Angeles. Defendant sat next to her. Defendant, who was going to El Paso, Texas, admitted she was the driver in a news story about the Stockton hit-and-run incident in which a little boy was killed. Defendant said she was not going to turn herself in because she had a son of her own. When Cervantes asked how she was able to sleep, defendant said she did not think about it.

Defendant was charged with first degree murder (Pen. Code, § 187, subd. (a)),[2] attempted premeditated murder (§§ 664/187, subd. (a)), and hit-and-run resulting in death (Veh. Code, § 20001, subd. (b)(2)), with an enhancement for personal use of a deadly weapon (§ 12022, subd. (b)). The jury convicted her of the lesser included offenses of second degree murder (§ 187, subd. (a)) and attempted murder done with premeditation

---

[2] Undesignated statutory references are to the Penal Code.

3

and deliberation (§§ 664/187, subd. (a)), convicted her of hit-and-run resulting in death, and found true the deadly weapon enhancement. The trial court sentenced her to 22 years to life in prison, imposed various fines and fees, and awarded 440 days of presentence credit (440 actual and 0 conduct).

Defendant appeals.

We appointed counsel to represent defendant on appeal. Counsel filed an opening brief that sets forth the facts of the case and requests this court to review the record and determine whether there are any arguable issues on appeal. (*People v. Wende* (1979) 25 Cal.3d 436.) Defendant was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing of the opening brief. More than 30 days elapsed, and we received no communication from defendant. Having undertaken an examination of the entire record, we find no arguable error that would result in a disposition more favorable to defendant.

## DISPOSITION

The judgment is affirmed.

                                                                    RAYE         , P. J.

We concur:

        BUTZ         , J.

        MAURO        , J.

4